UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| Angel R. Garcia, | : |
| Plaintiff, | : |
| - against - | :   05 CV 5138(SAS)(AJP) |
| Department of Correctional Services,<br>New York State, | : |
| | : |
| Defendants. | |
| | : |

------------------------------------------------------------X

### DEFENDANTS' RULE 56.1 STATEMENT

Pursuant to Rule 56.1 of the Civil Rules of this Court, defendants, the New York State Department of Correctional Services and New York State (collectively, "Defendants"), by their attorney, ELIOT SPITZER, Attorney General of the State of New York, hereby submit the following statement of material facts to which there are no genuine issues in dispute, and which would entitle them to summary judgment as a matter of law:

### UNDISPUTED FACTS

**A.      Plaintiff's Title VII Claim**

1.      Plaintiff has alleged, and Defendants have denied, that in January 2004, Sergeant Alicia Perez, employed at Fulton, called plaintiff a "Puerto Rican rat" during the course of a verbal disagreement during working hours at Fulton. See September 8, 2006 Declaration of Jeb Harben ("Harben Decl."), Exh. A (Complaint) at p. 5; Exh. B (Answer) at ¶ 9.

2.      The record indicates that this verbal exchange between plaintiff and Sgt. Perez took place on or about January 7, 2004. See Harben Decl, Exhs. I and J.

3.      Like plaintiff, Sgt. Perez was born in Puerto Rico and considers herself Puerto

Rican.  See Harben Decl., Exh. C (February 10, 2006 Deposition of Alicia Perez) at pp. 44, 55-56.

4. While it is undisputed that there was some form of verbal exchange on or about January 7, 2004 between plaintiff and Sgt. Perez, none of the witnesses (other than plaintiff) to their exchange of words heard Sgt. Perez call plaintiff a "Puerto Rican rat" to his face or even outside of his presence.  See Harben Decl., Exh. D (January 7, 2006 Deposition of Robert Taylor) at pp. 34, 52-55; Exh. E (January 7, 2006 Deposition of Cylton Collymore) at p. 37; Exh. I; Exh. J.

5. After the verbal exchange, plaintiff verbally complained to Acting Deputy Superintendent Cynthia Morton about Sgt. Perez.  See Harben Decl., Exh F (January 18, 2006 Deposition of Cynthia Morton) at pp. 59-60.

6. Sgt. Perez was not plaintiff's supervisor.  See Harben Decl., Exh. G (April 25, 2005 Deposition of Angel Garcia) at pp. 127-128.

7. Acting Deputy Superintendent Morton requested that everyone who had witnessed the verbal disagreement between Sgt. Perez and plaintiff provide written statements as to what they observed.  See Harben Decl., Exh. F at pp. 54-64.

8. Statements were taken from plaintiff, Sgt. Perez, Sgt. Robert Taylor, Sgt. Cylton K. Collymore and Lieutenant George Enny.  Id.  See also Harben Decl., Exh. H.

9. Other than plaintiff's statement, none of these witness statements corroborated plaintiff's claim that Sgt. Perez called plaintiff a "Puerto Rican rat."  Id.

10. The results of this internal investigation were forwarded to DOCS' Office of Diversity Management.  Id.

11. The DOCS' Office of Diversity Management ("ODM") then conducted its own investigation of plaintiff's claims. Mary Savage and Lucy Buther-Jones of that office both interviewed and took their own statements from each of the witnesses. See Harben Decl., Exh. I.

12. After the relevant witnesses were interviewed and provided signed statements, Ms. Savage and Ms. Buther-Jones prepared reports summarizing those witness statements. See Harben Decl., Exh. J.

13. Based on the witness statements, Ms. Savage and Ms. Buther-Jones both concluded that plaintiff's claim that he had been called a "Puerto Rican rat" could not be substantiated. Id. See also Harben Decl., Exh. M (Bates No. 136).

**B.     Plaintiff's Claim For a Reasonable Accommodation Under the ADA**

14. On or about March 25, 2004, plaintiff submitted a written request to Acting Deputy Superintendent Laurel Jones seeking to have his work schedule on Tuesday through Friday changed from 9:00 a.m. to 5:00 p.m. to 11:00 a.m. to 7:00 p.m. Plaintiff stated that his request for later working hours was "due to medical reasons," but did not state what those purported medical reasons were. See Harben Decl., Exh. A (Exhibits 1 and 2 to Complaint).

15. Plaintiff's request to change his working hours was not accepted at that time. Id.

16. Immediately prior to requesting this change in his working schedule, plaintiff apparently sought information from the Equal Employment Opportunity Commission ("EEOC") with respect to filing a complaint against DOCS. See Harben Decl., Exh. K.

17. Almost immediately after his request was not accepted, plaintiff filed charges against DOCS with the EEOC pertaining to his allegations with respect to Sgt. Perez and his request to change his working hours. Id.

18. Plaintiff continued to work under the 9:00 a.m. start time for approximately three weeks before he was suspended from work on or about April 16, 2004 for reasons not related to the allegations in this complaint. See Harben Decl., Exh. L.

19. While he was suspended, the ODM contacted plaintiff with respect to his EEOC charges. See Harben Decl., Exh. M (Bates No. 35).

20. Plaintiff was advised that if he wished to change his work schedule due to a medical disability, he needed to fill out the appropriate DOCS form requesting a reasonable Accommodation and provide medical documentation with respect to his medical condition. Id.

21. On or about May 24, 2004, plaintiff submitted a completed form for requesting a reasonable Accommodation to DOCS and provided a note dated May 4, 2004 from Dr. Paul Maravel, one of his treating physicians. See Harben Decl., Exh. M (Bates Nos. 121-122).

22. The May 4, 2004 note stated:

> Patient is requesting a change in working hours to late morning (11 am - 7 pm) - due to his severe sleep apnea - and his inability to get a sufficient amount of sleep

Id.

23. Dr. Maravel has subsequently stated that he:

> wrote the note as a courtesy to Mr. Garcia, who was my patient. The note is not a statement that in my medical opinion, Mr. Garcia's sleep apnea required the request shift change or that he was unable to perform his job functions without the change. To date, I have not offered any such opinion or medical advice to Mr. Garcia.

See July 21, 2006 Declaration of Paul Maravel, M.D. at ¶¶ 4-5 attached as Exh. N to the Harben Decl.

24. When plaintiff returned from his suspension in or about August 2004, he agreed to a new work schedule in which he would begin work at 10 a.m. several days a week. See Harben Decl., Exh.O.

26. Plaintiff was suspended pending termination on or about January 14, 2005 for reasons unrelated to this litigation. See Harben Decl., Exh. P.

27. The termination of plaintiff was upheld by a labor arbitrator pursuant to a decision dated September 22, 2005. Id.

Dated: New York, New York
      September 8, 2006

Respectfully Submitted,

ELIOT SPITZER
Attorney General of the
  State of New York
Attorney for Defendants
By:

_____
JEB HARBEN (JH 0412)
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6185